497 P.2d 723 (1972)
VAL VU, INC., a Colorado Corporation, Plaintiff-Appellant,
v.
Thomas E. LACEY, d/b/a Liquor Mart, Defendant-Appellee.
No. 70-614.
Colorado Court of Appeals, Div. II.
May 23, 1972.
Caplan & Earnest, Gerald A. Caplan, Boulder, for plaintiff-appellant.
Hollenbeck, King, French & Mills, Peter C. Dietze, Guy A. Hollenbeck, Boulder, for defendant-appellee.
Selected for Official Publication.
SMITH, Judge.
Defendant, Liquor Mart, a retail liquor store in Boulder, was sued by Val-Vu, Inc., a competitor in the same community, pursuant to C.R.S.1963, 55-2-1 et seq., The Unfair Practices Act. Plaintiff in its complaint alleged that defendant had in the past sold and was continuing to sell below cost in violation of the Act and sought a permanent injunction as authorized by C. R.S.1963, 55-2-9(1).
After a trial upon the merits, a temporary injunction previously entered was made permanent based upon the court's finding:
"a. that the Defendant did violate the statutory provisions cited in some of the *724 instances alleged in the complaint in that the Defendant sold alcoholic beverages below his cost as defined by C.R.S. '63, 55-2-3 et seq. and not in an effort to meet competition; . . ."
Although the plaintiff succeeded in obtaining a permanent injunction which prohibits further violation of the Act by the defendant, it is the position of the plaintiff in this appeal that the guidelines for compliance established by the trial court are in error, having been derived from improper construction of the Act. We perceive no such error and the judgment of the trial court is affirmed.
Chapter 55, Article 2 of the 1963 Colorado Revised Statutes entitled "Unfair Practices Act" was enacted in 1937 with the declared purpose:
". . . to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented . . .." C.R.S.1963, 55-2-16.
As it relates to the facts of this case, the Act, C.R.S.1963, 55-2-3, prohibits a retailer from selling, offering to sell, or advertising for sale any article or product for less than the cost of the article to the retailer except that such prohibition shall not apply to any sale ". . . made in good faith to meet the legal prices of a competitor selling the same article or product, or service or output of a service trade, in the same locality or trade area." C.R.S.1963, 55-2-6(1) (e).
The plaintiff relies on C.R.S.1963, 55-2-13(2) which reads as follows:
"(a) In order that such price of a competitor be considered a legal price within the meaning of this article, it shall be incumbent upon the defendant to show:
(b) That he has met specific price of a specific competitor in an area directly competitive with the defendant so claiming to have met such price at a time when such price was in actuality competitive with that of those offered by such competitor;
(c) That such price shall have been quoted by the competitor on the same or similar goods, wares, and merchandise, and that such goods, wares, and merchandise of such competitor was sold or offered for sale by the competitor to the consuming public in direct competition with the goods, wares, and merchandise of such defendant, in the trade area of the defendant;
(d) That such price shall have been quoted by the defendant directly and immediately in an endeavor in good faith to meet the price quoted by such competitor;
(e) That the defendant made a bona fide effort to determine the legality of such price of such competitor."
The conclusions of the trial court are set out in the permanent injunction as follows:
"a. that the Defendant's trade area is Boulder County;
b. that offerings by Denver merchants are offerings in competition with Boulder merchants and that the Defendant is entitled to meet said prices as provided by C.R.S. '63, 55-2-13;
c. that prices for alcoholic beverages quoted or offered by persons engaged in the retailing of alcoholic beverages to the consuming public in Boulder County are prices which the Defendant may meet as provided by law, regardless of the fact that the place of business of such person may not be located in the Defendant's trade area; . . . ."
The trial court had previously concluded when ruling upon the preliminary injunction:
". . . That the defendant is entitled to meet the legal prices of alcoholic beverages as advertised or offered for sale by retail liquor outlets in the Denver Post, the Rocky Mountain News, the Longmont Times Call, the Town and Country Review and the Boulder Daily *725 Camera, said newspapers being in general circulation throughout the defendant's trade area . . .."

I.
Plaintiff argues that "trade area", as defined by C.R.S.1963, 55-2-6(1) (e), restricts price competition to the immediate area of the business. Consequently, plaintiff would have us hold that, as a matter of law, Boulder merchants cannot be in direct competition with Denver merchants by virtue of the express language of the Unfair Practices Act. The trial court's reliance on the distribution of newspaper advertising is challenged as encouraging unfair pricing practices which undermine the purpose behind the statute. A reading of the Act, in its entirety, persuades us that "trade area" was not meant to be a term of geographical restriction. The trial court found that the trade area of the defendant was Boulder County, but his later findings indicate that he felt that liquor merchants in Denver were in competition with the defendant. C.R.S.1963, 55-2-6(1) (e), does not define "trade area" in terms of "the same locality" as the plaintiff argues. Rather, the term "trade area" as used in the statute is not limited in terms of the immediate area of the business. This distinction the trial court correctly perceived. Upon a reading of the record, the trial court's intent is clear: that, where there are a significant number of persons who would leave a particular merchant's immediate area and go to an adjoining area as a result of advertisement from that area's newspapers, that merchant should be allowed to meet those advertised prices without violating the Unfair Practices Act.
What is evident from the record is that if liquor is at a higher price in Boulder than in Denver, there will be a substantial number of those residing in Boulder who will buy liquor in Denver instead of Boulder. The defendant testified that he felt he had to meet prices of liquor stores in the Denver metropolitan area because price is the controlling factor in determining where people buy liquor. The acceptance of this proposition formed the basis for the trial court's conclusion that the defendant should be permitted to meet prices advertised in either the Rocky Mountain News or the Denver Post. The plaintiff argues that, inasmuch as there is statewide distribution of these newspapers, the statute is undermined because the court's holding would permit merchants with higher costs in the areas away from Denver to lower prices below cost with intent to destroy competition, and yet be free from liability or prosecution under the statute. This is a misconstruction of the trial court's holding. In the light of the mobility of our population, and the proclivity of residents of Boulder to shop throughout the Denver metropolitan area, the trial court's ruling was correct.

II.
The plaintiff contends that the trial court misconstrued C.R.S.1963, 55-2-13(2) (e) which statute requires a defendant who claims he lowered prices in order to meet a competitor's price to establish that he has made a "bona fide effort" to determine the legality of such price of his competitor prior to meeting the competitor's price. The findings and conclusions of the trial court are that a merchant using his own costs and knowledge of the trade as a basis can reasonably judge the legality of the prices of his competition and that such a determination satisfies the bona fide investigation requirements of the statute.
Plaintiff urges us to hold that a "bona fide effort" would require nothing less than contacting the competitor, or his wholesaler, to determine his costs. There is no statutory provision which allows competitors' investigations of another's books. In such an investigation as plaintiff urges, complete reliance would rest upon a competitor's, or his wholesaler's, word. Practically speaking, it makes little sense to require a businessman to call a competitor and assume that the competitor, or one doing business with him, will freely supply incriminating information. In this case, *726 the defendant relied on his own knowledge of the retail liquor industry in not meeting some advertised prices while readily meeting others. There is no statutory provision for a merchant to conduct a more thorough investigation than this without commencing suit under the Act. The trial court's findings and conclusions in this regard, therefore, will not be disturbed.

III.
The trial court ruled that interrogatories submitted by the plaintiff were oppressive under C.R.C.P. 26. We have read the interrogatories and find that they are of the same nature as the interrogatories in Konczakowski v. Paramount Pictures, 20 F.R.D. 588, where the court stated:
"With regard to those interrogatories which request information and data obtainable from available documents, the general rule is that a party should not be permitted to compel his opponent to make compilations or perform research and investigations with respect to statistical information which he might make for himself by obtaining the production of the books and documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, or by doing a little footwork, as the case may be."
There is no difference between the Federal Rule in that case and the Colorado Rule in this case. The defendant in this case furnished the plaintiff with all the invoices of merchandise purchased during the period, and as other documents were available by use of C.R.C.P. 34, there is no prejudice against the plaintiff resulting from the trial court's discretionary ruling that the interrogatories were of an oppressive nature.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.