**HOPKINSON THEATRE, Inc., et al.,**
Plaintiffs,

v.

**RKO RADIO PICTURES, Inc., et al.,**
Defendants.

United States District Court
S. D. New York.

Jan. 16, 1956.

Sperry, Weinberg & Ruskay, New York City, for plaintiffs.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for 20th Century-Fox.

Donovan, Leisure, Newton & Irvine, New York City, for RKO Radio Pictures, etc.

O'Brien, Driscoll & Raftery, New York City, for RKO Keith Orpheum, etc.

Phillips, Nizer, Benjamin & Krim, New York City, for United Artists Corp.

Schwartz & Frohlich, New York City, for Columbia Pictures.

Austin C. Keough, New York City, for Paramount Pictures Corp., etc.

Herbert B. Lazarus, New York City, for American Broadcasting Paramount Theatres.

Robert W. Perkins, New York City, for Warner Bros. Pictures, Inc.

Benjamin Melniker, New York City, for Loew's, Inc.

Weisman, Celler, Allen, Spett & Sheinberg, New York City, for Metropolitan and Randforce.

Adolph Schimel, New York City, for Universal, etc.

EDELSTEIN, District Judge.

In a suit for treble damages under the anti-trust laws by the plaintiff exhibitors of motion pictures against distributors and other exhibitors, the defendants have variously objected to an extensive set of interrogatories propounded by the plaintiffs. At the court's suggestion, certain of the items have been resolved by withdrawals or other agreement, and others have been amended. The decision refers to those interrogatories, as amended, which have not been resolved by mutual consent.

■ Interrogatories 8 through 11 seek to elicit information concerning the granting and changing of run, clearance and availability for four specified theaters, and interrogatory 36, as amended, seeks information concerning the allocation of group prices or guarantees, in the Brownsville area of Brooklyn. Objection is made on the ground that discovery has previously been allowed and furnished to plaintiffs on these theaters, and the interrogatories would require defendants to summarize or compile information from documents already produced. Plaintiffs deny that the information is available from the documents produced. On 8 through 11, it would indeed seem unlikely that these documents would contain the information sought. But on question 36, there is no basis even for the hazarding of a guess by the court to determine the conflict of assertion. Accordingly, there is no alternative but to require the plaintiffs to specify, for interrogatory 36, in what respects the documents previously produced do not adequately supply the information sought. However, if it is true, as the plaintiffs maintain, that the information requested is not based upon written contracts, but is based merely upon practice and course of dealing, the defendants will be required to answer. An answer by the defendants that the information has a documentary basis will require specification by the plaintiffs. Objections to interrogatories 8 through 11 will be overruled. The further objection to those questions, that subdivisions (a) and (b) of each call for summaries, conclusions or legal opinions, is not well taken. It is clear that neither conclusions nor opinions, in so far as they may be involved, are sought for advisory purposes, but merely for the purpose of determining their existence as relevant operative facts in the case. Indeed, such information as is called for appears in any event to be factual.

■■ Interrogatories 12 and 13 seek information bearing on the moveover arrangement on Loew split pictures between Loew's Pitkin, Premier and Palace theaters. Relevancy seems adequately established on the ground that, it is alleged, this arrangement resulted in a delay in the exhibition of pictures to subsequent runs, including the plaintiffs'. But it is argued that discovery for the Pitkin and Premier theaters has previously been denied. It does appear that prior orders under Fed.Rules Civ.Proc. rule 34, 28 U.S.C.A. have denied plaintiffs' request for large scale production of documents on these theaters, while the cut-off cards only of the Palace were allowed. But I am not persuaded that a denial of a full discovery is a necessary bar to a subsequent attempt to procure specific information, or that the plaintiffs are thereby attempting to evade the previous orders. For the Palace, it does not seem likely that the kind of information requested would be available on the cut-off cards already produced. Nor is the objection to 12(d) and 13(d), that factual conclusions and legal opinions

are called for, well taken. The objections will be overruled.

■ Interrogatories 14 through 16 seek information relating to runs and clearances and film rentals; and interrogatories 18 through 21 ask about elimination and cancellation privileges, rights of refusal and rights to deduct certain costs on percentage pictures—all for theaters on which plaintiffs have previously been allowed discovery by way of the production of cut-off cards. Again the defendants object that these questions require information ascertainable from documents already produced. The plaintiffs, however, have indicated that there are gaps in the information disclosed by the documents produced and they want only to have the gaps filled in. Toward that end, plaintiffs' counsel has represented that he was prepared to submit charts drawn up from the cut-off cards produced, so as to indicate the gaps where completion is necessary. It is possible, of course, that the documents previously produced failed to provide all the information which it was expected they would provide, and if there is further relevant material available to defendants, the plaintiffs are entitled to discover it. But the defendants are entitled to a specification of the data claimed to be omitted. No charts or schedules were presented to the court, and consequently, no specific objections have been made and no specific ruling can be made. Accordingly, the plaintiff will supply charts and schedules indicating gaps in the previous discovery and the defendants will be required to fill them in, with the opportunity, of course, to make exceptions to the accuracy of the tabulations.

■ Interrogatory 17(b) and part of interrogatory 18 are directed toward information on short subjects. The plaintiffs claim to have been denied a run of feature motion pictures to which they claim their theater was entitled, and there appears to be no support in the pleadings or depositions to a present claim of controversy over short subjects. Even if a tenuous connection could be made on the ground that the complaint charges discrimination in the licensing of "motion pictures", the burden imposed upon the defendants to compile the voluminous details involved would be out of all proportion to any corresponding advantage to the plaintiffs. The objection will be sustained to interrogatory 17(b) and to that part of interrogatory 18 that pertains to short subjects.

■ Interrogatory 28, as amended, is an inquiry about the institution of competitive bidding by the distributors in the area of the plaintiffs' theater. The facts may well be quite relevant on the issue of the relaxation in the system of runs and clearances, even though there is no issue of competitive bidding by plaintiff. The objection will be overruled.

■■ Interrogatories 37 through 40 go to the general issue of conspiracy and are not geographically limited. They ask information about the number of theaters in the United States in which defendants had a financial interest and the licensing of pictures to theaters operated or previously operated by certain of them, including aggregate film rentals, the existence of master agreements, franchises and joint financial or operating interests. As this court has previously stated, it will not tolerate a nation-wide roving inquisition into the historical misdeeds of the moving picture industry. But the interrogatories here framed do not fall into that category, and they do not appear to be designed to raise unreasonable, far-fetched and extraneous issues of fact having no real significance in this case. They are, I believe, reasonably calculated to bear upon the issue of conspiracy, which is necessarily a broad thoroughfare in cases of this kind, without abusing the opportunity in an unlimited exploration of side-streets. The objections will be overruled.

■ Interrogatories 41, 45 and 46 are clearly relevant in seeking to determine the relationship between certain of the defendants, and interrogatories 43 and 44 are relevant to reveal the status of one of the defendants, despite the fact that the questions transcend to some degree the limited geographical area of the plaintiffs' theater and requires reference to non-parties. The objections will be overruled.

■ Interrogatory 49 asks certain defendants the parties and dates of agreement pertaining to the operating of certain theaters, and interrogatories 50 and 51 ask whether defendants executed certain described documents. These agreements certainly involve theaters outside the area strictly under consideration, but the geography here is incidental; the existence and provisions of the agreements are of significance, on the issue of mutual and interlocking interest of some of the defendants. The objections will be overruled.

■ Interrogatory 52 is properly addressed to the issue of the connection between a defendant exhibitor and a representative of one of the defendant distributors, bearing upon the question of that representative's dealing with the exhibitor's competitors, and the question is not improper merely because the connection may be spelled out by reference to a theater out of the vicinity of the plaintiffs' theater. However, the defendant corporation need not answer concerning the stock ownership of its officers in some other corporation.

■ Interrogatory 53 asks information on factors bearing on the priority of run and the granting of clearances, such as size, facilities and admission prices. The theaters specified include three, the Stadium, the Carroll and the Congress, on which no discovery has previously been permitted, and I see no reason at this time for broadening the scope of inquiry. On the other theaters specified, full discovery has been granted for one, and limited discovery for the others. In so far as I have been able to determine, there have been no previous interrogatories on this subject matter. Inasmuch as the affairs of these theaters have been held to have some possible relevance in this case, and inasmuch as the issue toward which the questions are directed— the unjustifiedly favored playing positions of these theaters—appears to be a proper one, I am unwilling to exclude them on the basis of an arbitrarily drawn geographical line. The objections will be overruled.

■ Interrogatory 54 seeks the gross receipts of three theaters as a basis of comparison in connection with plaintiffs' proof of damages. It has been represented that these theaters are three to four times the size of plaintiffs' theater and are not in any respect comparable to it. Accepting that representation, I feel that the answers sought could be of only infinitesimal value in proof of damages. Normally, such information would be required, but in view of the excessive burden to the defendant required to compile it, for a period of twelve years, some corresponding benefit to the plaintiff amounting to more than a shadow of a possibility ought to be demonstrated. The objection will be sustained.

■ The plaintiffs have attempted to offer no explanation for interrogatory 55, which asks the approximate number of theaters operated "from time to time" in the "metropolitan area" by one of the defendant exhibitors. The objection therefore will be sustained.

■ Interrogatory 59, asking the names of persons who assisted in the preparation of the answers to the interrogatories, is supported by the argument that plaintiffs' have answered such a question. Nevertheless, I see no justification for the question, and objections will be sustained.

Settle an order on notice.